Case: 1:25-cv-05149 Document #: 1-2 Filed: 05/09/25 Page 30 of 44 PageID #:30
EEOC Received 09-09-2024

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act Statement and other information before completing this form. | ☒ FEPA<br>☒ EEOC | |

| Illinois Department of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mausumi Syamal (Email: msyamal@gmail.com)** | **(248) 229-8229** | **2/25/1981** |

| Street Address | City, State and ZIP Code |
|---|---|
| **164 North Peoria St, Apt 2308, Chicago, IL 60607** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **c/o Jeff Del Rio, Esq., Morgan and Morgan, P.A.**<br>**One Tampa City Center, 201 N. Franklin Street, Suite 700, Tampa FL 33602** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **Rush University Medical Center**<br>**(Email: Katherine_Goyert@rush.edu)** | **1,000+** | **(312) 942-7889** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1611 W Harrison St Suite 550, Chicago, IL 60612** | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☒ COLOR  ☒ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER | Earliest **3/2024**  Latest **8/22/2024**<br>☒ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**This filing is an amendment to EEOC Charge No.: 440-2024-09345**

**I:      PERSONAL HARM:** I, Mausumi Syamal (MD, MS, FACS), have been subjected to acts of ongoing disparate and discriminatory treatment on the basis of my race (Asian), national origin (Indian), color (brown), and sex (female). I was hired by Rush University Medical Center (hereinafter referred to as, "Rush") on or about October 11, 2023, and am currently employed as a Director of Voice, Airway & Swallowing Program – Section Head Laryngology – Assistant Professor. At all times material, I have never engaged in any professional malpractice or wrongdoing and have always provided patients with unparalleled care while steadfastly supporting my fellow medical practitioners and support staff. Unfortunately, Rush's actions per their policies related to "disruptive conduct," have had a discriminatory impact on myself and other female physicians of color.

Patient prejudice on female minoritized physicians has been documented in recent studies and has shown that patients are more likely to encounter physicians that may not conform to certain pre-conceived notions of what a physician should look like, leading some patients to react with biased behavior in response to such encounters. *See*: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9294398/. Specifically, the subjective Press Ganey surveys that are being utilized by Rush have been shown to provide biased results based on sex and race. *See*: https://pubmed.ncbi.nlm.nih.gov/31880269/; https://pubmed.ncbi.nlm.nih.gov/33165609/. Studies also provide that interprofessional workplace conflicts amongst staff occur at a much high rate due to gender related biases that dominate over professional norms. (*See*: **JAMA Women Surgeons' Experiences of Interprofessional Workplace Conflict**).

Rush has engaged in practices of taking Press Ganey survey results and subjecting female physicians of color to disciplinary and adverse employment actions. These policies, as effectuated by Rush leadership, have had a disparate impact on its female physicians of color.

In my case, I diligently communicated these specific concerns to Rush on or about May 10, 2024, in a meeting with Dr. Pete Batra, Dr. Kerstin Stenson, and Ms. Javette Simmons and provided written copies of the corroborating literature and film on the topic. Surprisingly, no remedial measures were taken. Instead, as a result of alleged patient reviews in matters where I engaged in no wrongdoing, I have been forced to undergo psychiatric evaluation that is

normally reserved for staff with drug and alcohol issues and have been issued a Focused Professional Practice Evaluation (FPPE) Plan by Dr. Pete Batra and Dr. Peter Revenaugh.

The FPPE Plan references alleged 4 patient complaints out of the 1500+ patients I have seen as well as other "multiple channels of complaints", which upon information and belief, have never been substantiated by Rush and sets objective mandates that I not receive two (2) or more patient complaints within the next ninety (90) days. Any failure of the guidelines set out in the FPPE could lead to the termination of my employment with Rush.

I have diligently requested the ability to review the alleged "multiple channels of complaints" and any corresponding documentation regarding Rush's investigation of the complaints, but my requests have been unequivocally denied. Without an opportunity to rebut the assertions that I somehow have engaged in unprofessional or disruptive communications, my employment at Rush has been threatened. While male surgeons have engaged in far more egregious acts of unprofessional communications along with poor bedside manner, they have faced far fewer negative repercussions.

The notable absence of any senior black/brown female surgeons in my department, coupled with the recent departure of four (4) departmental surgeons (two (2) females, one of which was brown), highlights a pattern of disproportionate adverse employment actions related to female surgeons of color in which Rush attempts to justify through its policies and practices. It is notable that no female surgeons of color hold any leadership positions within my Otolaryngology group, and I have been denied promotional opportunities that were previously promised to me and have been afforded to comparator employees.

I maintain all of the requisite qualifications and years of service to be moved into an Associate Professor role, yet Dr. Batra has refused to put my name up to the board for consideration, only indicating that he did not believe I would receive approval. I have maintained my status as an Assistant Professor since 2009, yet have been met with significant, irrational, push back in my attempts to garner advancement at Rush. Faculty advancement has been recently found to be limited for women in all racial groups within academic otolaryngology (https: pubmed.ncbi.nlm.nih.gov/37847098/).

## AMENDMENT: RETALIATION / ADVERSE EMPLOYMENT ACTION

Subsequent to my engagement in the protected activity of filing a charge of discrimination with the EEOC, my employment with Rush was terminated on August 22, 2024, without cause. I was diligent in opposing the discriminatory actions of Rush by filing with the EEOC along with the filing internal complaints with Rush's Office of Institutional Equity ("OIE") and my superiors. With respect to the internal filings, I reported numerous instances in which female employees were often targeted by the chairperson of the Department of Otorhinolaryngology – Head and Neck Surgery at Rush University Medical Center, Dr. Peter Batra. Rush took no remedial measures to address my reports of discrimination and refused to speak with several witnesses that maintained relevant information about Dr. Batra's discriminatory conduct towards female employees that included sexist remarks, discriminatory hiring practices, and violations of the Equal Pay Act of 1963 ("EPA").

Additionally, Dr. Batra made overt efforts to push me out of Rush by soliciting negative remarks from his personal allies (Elyse Adkins, RN, Dr. Bobby Tajudeen & Dr. Michael Eggerstedt) in an effort to substantiate the FPPE. The solicitation of these "complaints" from non-experts that openly admitted to having no surgical or clinical firsthand interaction with me, were sham or malicious peer reviews that were sought from a select group were clearly done to try and substantiate my removal from Rush. Throughout the duration of the FPPE process, I was never notified of any issues with my performance or disciplinary matters that could lead to an adverse employment action.

Once Rush was made aware of the EEOC filing on or before July 8, 2023, Dr. Batra engaged in additional retaliatory acts by weaponizing new policies in a targeted manner against me which resulted in administrative harm for the patients of Rush. As a result, I documented these issues on or about July 29, 2024, with Catherine C. Howlett, JD, Senior Investigative Counsel & Deputy Title IX Coordinator for Rush Legal, notifying the company of Dr. Batra's continued retaliatory acts.

On August 21, 2024, I was informed by Ms. Howlett that the investigation would be closed, even though Rush failed to speak with several of the individuals that I had provided as witnesses.

On August 22, 2024, I was provided with a letter dated August 21, 2024, from Rush which provided that the FPPE process would be closed, as I completed the punitive requirements mandated by the FPPE and had no other issues that violated the specific requirements of the FPPE. That same day, I was directed to meet with Dr. Pete Batra, Dr. Peter

Revenaugh, Dr. Kerstin Stenson, and human resources. At that time, I was informed that while the FPPE was closed out, Rush elected to terminate my employment **without cause**, effective September 1, 2024. I was informed that there were issues regarding my "fit" within the department and "concerns about [my] behavior." I was never provided with any specific examples of issues that substantiated Rush's termination rationale and was never provided with an opportunity to correct any alleged issues through the use of enumerated progressive discipline policies. Given that the termination was effectuated without cause, Rush must provide ninety (90) days' worth of pay, as stated in my contract with Rush. While male comparators have recently been reported for profound patient safety issues, fraudulent billing practices, discriminatory behavior, and sexual harassment, they remain gainfully employed by Rush. It is evident that Rush retaliated against me for having the temerity to report acts of discriminatory treatment which violated federal and state laws.

**II:      STATEMENT OF DISCRIMINATION**: I have been discriminated against on the basis of my race, national origin, and sex in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the state equivalents per the Illinois Human Rights Act (IHRA). My efforts to engage in the protected activity of reporting the aforementioned violations of law have led to retaliation in violation of Title VII and the IHRA, as my employment was terminated as a result of engaging in protected activity.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>09/09/2024 | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)*     09/09/2024 |

State of Texas                    County of Harris
Sworn to and subscribed before me

on 09/09/2024 by Mausumi Syamal.

John Louis Williams JR

ID NUMBER
132670064
COMMISSION EXPIRES
September 10, 2028

Notary Public, State of Texas

Electronically signed and notarized online using the Proof platform.

CP Enclosure with EEOC Form 5 (5/01)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.   FORM NUMBER/TITLE/DATE.**  EEOC Form 5, Charge of Discrimination (5/01).

**2.   AUTHORITY.**  42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117.

**3.   PRINCIPAL PURPOSES.**  The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.   ROUTINE USES.**  This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.**  Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII or the ADA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.